# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RAINBOW COMMUNICATIONS, LLC, et al.,

Plaintiffs,

v.

LANDOVER WIRELESS CORPORATION,

Defendant.

Case No. 2:19-CV-02187-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiffs Rainbow Communications, LLC ("Rainbow") and Landover Eastern Kansas, LLC ("LEK") (together, "Plaintiffs"), filed this action in the District Court of Brown County, Kansas, against Defendant Landover Wireless Corporation ("Landover"), alleging claims for (1) breach of contract, (2) breach of fiduciary duty, (3) conversion, and (4) unjust enrichment. Landover removed this action pursuant to 28 U.S.C. § 1332, asserting federal subject matter jurisdiction based on diversity. Before the Court is Plaintiffs' Motion to Remand and Request for Attorneys' Fees (Doc. 5). The matter is fully briefed, and the Court is prepared to rule. For the reasons explained in detail below, the Court grants Plaintiffs' motion to remand, but denies the request for attorneys' fees.

## I. Background

LEK is a Kansas limited liability company, consisting of two members, Rainbow and Landover. Rainbow, a Kansas limited liability company consisting primarily of members who are citizens of Kansas,[1] provides internet, telephone, and digital television services. Landover is a mobile broadband operator incorporated in Delaware with its principal place of business in

---

[1] The parties do not argue that Rainbow's citizenship impacts the analysis for diversity jurisdiction.

New York. In September 2010, Landover presented Rainbow an investment opportunity to obtain licenses for Low Power Television ("LPTV") stations—a class of television stations primarily for local and smaller communities—in Eastern Kansas.

In September 2010, Rainbow and Landover formed LEK for obtaining rights to the LPTV spectrum in Eastern Kansas. Rainbow, Landover, and LEK entered into the Operating Agreement of Landover Eastern Kansas, LLC (the "Operating Agreement"), which contained a preamble stating the Operating Agreement was "entered into by and among" LEK, Landover, and Rainbow[2] and signature blocks for Landover, Rainbow, and LEK.[3] In accordance with the Operating Agreement, Rainbow paid Landover a total of $1,300,000 on behalf of LEK.[4] The Operating Agreement required Landover to: (1) use the funds in accordance with its services, which included securing between 100 and 120 FCC-issued LPTV permits or licenses in LEK's name;[5] (2) hold LEK's funds in trust for LEK's benefit and not commingle these funds with Landover's own money;[6] (3) keep LEK's funds separate from its other funds;[7] and (4) prepare, file, and use its best efforts to prosecute applications for LPTV permits and licenses on behalf of LEK.[8]

On October 28, 2010, the FCC placed a freeze on new LPTV permit and license applications, which stalled Landover's ability to successfully file LPTV applications with the FCC. Plaintiffs allege that despite the freeze, Landover continually assured Plaintiffs it had a

---

[2] Doc. 1-1, Operating Agreement at 24. Rainbow was formerly known as Carson Communications, LLC. Doc. 1-1, Complaint at ¶4 & n.1.

[3] Doc. 1-1, Operating Agreement at 33–34.

[4] Doc. 1-1, Complaint ¶ 49.

[5] Doc 1-1, Operating Agreement at 36.

[6] *Id.* at 30, § 8.9

[7] *Id.* at 30, § 8.8.

[8] *Id.* at 36.

plan to obtain the LPTV licenses. Plaintiffs allege that the freeze on LPTV applications continued, however, and that they determined Landover was unable to help obtain LPTV licenses or permits. Plaintiffs alleges that they requested updates from LEK and that on April 20, 2018, Rainbow requested copies of the LPTV applications Landover uploaded to the FCC. Landover did not respond, and on June 29, 2018, counsel for Rainbow demanded Landover return Plaintiffs' funds and provide accounting records, but Landover refused. Plaintiffs subsequently filed this suit in the District Court of Brown County, Kansas on March 12, 2019.

Landover removed this case to the United States District Court for the District of Kansas on April 12, 2019.[9] On April 16, 2019, Plaintiffs' counsel emailed Landover, requesting that Landover withdraw its Notice of Removal because no diversity of citizenship exists between LEK and Landover.[10] Landover's counsel responded on April 19, informing Plaintiffs it declined to voluntarily withdraw its Notice of Removal and that Landover planned to raise nominal party and fraudulent joinder arguments to obtain federal diversity jurisdiction.[11]

## II. Discussion

### A. Motion for Remand

Federal district courts are required to remand a case "[i]f at any time before final judgment it appears the district court lacks subject matter jurisdiction."[12] To avoid remand, the removing party must establish federal jurisdiction by a preponderance of the evidence.[13] Because federal courts are courts of limited jurisdiction, courts strictly construe federal removal

---

[9] Doc. 1.

[10] Doc. 6-1 at 3–4.

[11] Doc. 6-2 at 2.

[12] 28 U.S.C. § 1447(c).

[13] *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

3

statutes with a presumption against federal jurisdiction.[14]  Courts must follow the inflexible and without exception presumption against federal jurisdiction by denying jurisdiction in all cases where federal jurisdiction does not affirmatively appear in the record.[15]  Moreover, courts must resolve doubtful cases in favor of remand.[16]

Remand is generally improper if the defendant appropriately removed a case to federal court that the plaintiff could have originally filed in federal court.[17]  Federal courts are courts of limited jurisdiction, and as such, they must have a statutory or constitutional basis to exercise jurisdiction over any controversy.[18]  Landover removed this case to federal court under 28 U.S.C. § 1332(a), asserting federal jurisdiction based on diversity.

### 1. Diversity Jurisdiction

To establish diversity jurisdiction, the party asserting jurisdiction, in this instance the defendant, must allege facts essential to show jurisdiction—namely that Plaintiffs and Defendant are citizens of different states and that the amount in controversy is greater than $75,000.[19]  Because the defendant is alleging federal jurisdiction, it has the burden of providing facts supporting jurisdiction by a preponderance of the evidence.[20]

---

[14] *See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1043, 1047 (D. Kan. 1999) (citations omitted).

[15] *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982).

[16] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[17] 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[18] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see also United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal quotation omitted)).

[19] *See Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001) (citing 28 U.S.C. § 1332(a)).

[20] *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

The parties do not dispute that the amount in controversy requirement is met. For purposes of diversity jurisdiction, Defendant Landover is a citizen of both its state of incorporation—Delaware—and its principal place of business—New York.[21] Courts determine a limited liability company's citizenship for jurisdictional purposes by the citizenship of its members.[22] Landover's Notice of Removal does not allege facts pertaining to either Plaintiff LEK's or Plaintiff Rainbow's membership.[23] Based on the record, however, Rainbow is at least a citizen of Kansas, and LEK—with members Rainbow and Landover—is a citizen of at least Kansas, New York, and Delaware.[24] Thus, as Landover and LEK do not have diversity of citizenship, Landover's Notice of Removal does not establish the existence of diversity jurisdiction.[25]

Accordingly, Plaintiffs maintain that the case should be remanded because the Court lacks subject matter jurisdiction over the case as there is no diversity of citizenship between the parties. Landover argues, however, that federal diversity jurisdiction is appropriate because LEK is a nominal party or alternatively, a fraudulently joined party. As explained below, the Court finds that based on the record LEK is neither a nominal party nor fraudulently joined and accordingly, remands this case to the District Court of Brown County, Kansas.

---

[21] *See Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) ("[A] corporation is a citizen of its state of incorporation and the state where its principal place of business of business is located.").

[22] *Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("[A]n LLC, as an unincorporated association, takes the citizenship of all its members.").

[23] *See* Doc. 1 ¶5.

[24] *See Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1234.

[25] Although Plaintiffs do not divulge the entirety of Rainbow's membership, Rainbow's citizenship does not impact the jurisdictional questions presented to the Court.

## 2. Nominal Party Status

Landover first argues that LEK is a nominal party, which prevents it from destroying diversity jurisdiction. The Tenth Circuit has explained that in evaluating diversity of citizenship, courts disregard nominal parties and consider only the citizenship of the real parties in interest.[26] That is, courts maintain jurisdiction when the real parties in interest have diverse citizenship, even when there is a non-diverse nominal party with no real interest in the controversy.[27] A federal court sitting in diversity must look to state law to determine whether a plaintiff is the real party in interest.[28] Under Kansas law, a real party in interest possesses the right sought to be enforced.[29]

On the face of the Complaint and the Operating Agreement, LEK has enforceable, substantive rights against Landover. Under the Kansas Revised Limited Liability Company Act ("KRLLCA"), a limited liability company may enforce its members' obligation to perform services under its operating agreement when a member fails to contribute its contractually obligated services.[30] As a member may be liable to the limited liability company to contribute cash, property, or services,[31] a limited liability company may recover the agreed value of services when one of its members fails to contribute the required services.[32]

---

[26] *Hann v. City of Clinton*, 131 F.2d 978, 981 (10th Cir. 1942); *see also Beasley v. Progressive Nw. Ins. Co.*, No. 14-2543-JAR-GLR, 2015 WL 630566, at *3 (D. Kan. Feb. 12, 2015) (citation omitted).

[27] *See Hann*, 131 F.2d at 981.

[28] *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985) (citations omitted).

[29] *See Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan. 2015); *see also United States v. Aetna Cas. Co.*, 338 U.S. 366, 381 (1949); *Weaver v. Emp'rs Fire Ins. Co.*, No. 88-1189-C, 1989 WL 46263, at *1 (D. Kan. April 10, 1989).

[30] K.S.A. § 17-76, 100(a).

[31] *See id.*; K.S.A. § 17-7699.

[32] K.S.A. § 1776, 100(a); *see Canyon Creek Dev., LLC v. Fox*, 263 P.3d 799, 806 (Kan. Ct. App. 2011) (finding that an LLC may enforce contribution obligations and any other rights under the operating agreement or applicable law against its members).

As identified by the preamble of the Operating Agreement, LEK, Landover, and Rainbow all entered into the Operating Agreement.[33] The body of the Operating Agreement further specifies the multiple rights and obligations for the benefit of LEK, and Plaintiffs allege that Landover, one of LEK's members, breached the following contractual obligations owed to LEK:

> [1] failing to provide the contracted services of obtaining 100-120 construction permits or licenses for LPTV channels in the name of LEK; [2] failing to prepare, file, and use its best efforts to prosecute the necessary applications for construction permits for four LPTV channels; [3] failing to hold all funds in trust for the benefit of LEK and commingling these funds; and [4] failing to deposit LEK's funds in a separate bank account belonging to LEK.[34]

The Complaint further alleges that as a member of LEK, Landover owed fiduciary duties to LEK, including the duty to act for the benefit of LEK, and that LEK placed its confidence in Landover to successfully obtain LPTV permits, as laid out in the Operating Agreement.[35] Therefore, on the basis of the Complaint, LEK has the substantive right to enforce Landover's obligations under the Operating Agreement and the fiduciary duties it is owed, making it a real party in interest.

Landover argues, however, that LEK is a nominal party to the breach of contract and breach of fiduciary duty claims based on the Operating Agreement because, unlike Rainbow and Landover, LEK did not sign the Operating Agreement.[36] Under the KRLLCA, however, a limited liability company is "not required to execute its operating agreement."[37] Moreover, like

---

[33] Doc. 1-1, Operating Agreement at 24.

[34] Doc. 1-1, Complaint ¶56.

[35] Doc. 1-1, Complaint ¶¶75–80. Plaintiffs do not address LEK's ability to bring claims for unjust enrichment or conversion, noting that these claims only pertain to Rainbow. Doc. 21 at 4, n.1.

[36] Although Plaintiffs do not concede that LEK did not sign the Operating Agreement, whether LEK signed the agreement is immaterial as to whether LEK is a nominal party. *See* Doc. 21 at 6, n.5.

[37] K.S.A. § 17-7663(k). Although K.S.A. 17-7663(k) was not in effect when LEK was formed, the current version of the limited liability act clearly states that "[f]rom and after July 1, 2014, this act shall be applicable to all

any member or manager, "[a] limited liability company is bound by its operating agreement whether or not the limited liability company executes the operating agreement."[38]

Landover cites *Trover v. 419 OCR, Inc.*—a derivative action under Illinois law where defendants sought to enforce an arbitration provision found in operating agreements—to support its argument that LEK's lack of signature precludes it from enforcing the operating agreement.[39] In *Trover*, the Illinois appellate court found that defendants could not enforce the arbitration provisions found in the operating agreements against the limited liability companies because under the facts of the case and Illinois law, the limited liability companies were not a party to the operating agreements at all.[40] The limited liability companies at issue in *Trover* did not sign the operating agreements, but unlike LEK they were also not listed on the signatory pages of the extensive operating agreements.[41] Further, there was no indication that the limited liability companies entered into the operating agreements.[42] Moreover, unlike the KRLLCA, the Illinois Limited Liability Company Act in effect when *Trover* was decided did not bind a limited liability company or allow it to enforce its operating agreement in the absence of the limited liability company manifesting assent to the operating agreement.[43] Therefore, the Court finds

---

limited liability companies formed in Kansas, *whether formed before or after such date*." K.S.A. § 17-76, 140 (emphasis added); *see also Investcorp, L.P. v. Simpson Inv. Co., L.C.*, 85 P.3d 1140, 1144 (Kan. 2003) (The KRLLCA "is retroactively applicable to all Kansas limited liability companies (LLCs), regardless of when formed.").

[38] K.S.A. § 17-7663(k).

[39] 921 N.E. 2d 1249, 1254 (Ill. App. Ct. 2010).

[40] *Id.* ("Illinois law and the facts in our case require a different result.").

[41] *Id.*

[42] *Id.* at 1254–55. The preamble to LEK's Operating Agreement states that it "is entered into by and among" Landover, LEK, and Rainbow. *See* Doc. 1-1 at 1.

[43] *Compare* K.S.A. § 17-7663(k) *with* 805 ILCS 180/15-5 P.A. 96-126, § 5, eff. Jan. 1, 2010. The Illinois limited liability statute was revised in July 2017 to include: "A limited liability company is bound by and may enforce the operating agreement, whether or not the company has itself manifested assent to the operating agreement." 805 ILCS 180-15-5(f), P.A. 99-637, § 5, eff. July 1, 2017.

that the alleged lack of LEK's signature on the operating agreement does not establish that LEK is a nominal party.

Additionally, Landover argues that under the Kansas statutory definition of an operating agreement, a limited liability company is not a party to its operating agreement as a matter of law.[44] Landover relies on *Elf Atochem N. Am., Inc. v. Jaffari*, a Delaware Supreme Court case interpreting the Delaware Limited Liability Company Act.[45] In *Elf Atchoem*, an LLC member brought claims on behalf of the LLC against another LLC member.[46] The Delaware Supreme Court wrote that "it is the members who are the real parties in interest" and "[t]he LLC is simply their joint business vehicle."[47] The Court is not persuaded by the Delaware court's dicta. Contrary to Landover's argument, the Delaware court held that the limited liability company *was bound* by an agreement regarding its governance and operation, even though the company itself did not execute the agreement.[48] Similarly here, LEK is bound to the Operating Agreement even in the absence of a signature.[49] Therefore, the Court finds that Kansas law does not preclude LEK from being a party to its operating agreement and enforcing its rights under the agreement as a real party in interest.

---

[44] K.S.A. § 17-7663(k) ("'Operating Agreement' means any agreement, whether referred to as an operating agreement, limited liability company agreement or otherwise, written, oral, or implied, of the member or members as to the affairs of a limited liability company and the conduct of its business. A member or manager of a limited liability company or an assignee of a limited liability company interest is bound by the operating agreement whether or not the member or manager or assignee executes the operating agreement. A limited liability company is not required to execute its operating agreement. A limited liability company is bound by its operating agreement whether or not the limited liability company executes the operating agreement . . . . An operating agreement may provide rights to any person, including a person who is not a party to the operating agreement, to the extent set forth therein.").

[45] 727 A.2d 286, 289 (Del. 1999).

[46] *Id.*

[47] *Id.*; Doc. 17 at 8.

[48] *Elf Atochem N. Am., Inc.*, 727 A.2d at 293 (emphasis added).

[49] *See id*; *see also* K.S.A. § 17-7663(k).

Further, to the extent Landover relies on *Raymond Loubier Irrevocable Trust v. Loubier*—a Second Circuit opinion ruling that a trust, in two different capacities and on both sides of the caption defeats diversity[50]—the Court finds it clearly distinguishable. Unlike the trust at issue in *Raymond*, which could "only sue and be sued in the name of its trustees,"[51] LEK is a separate legal entity from its members and has the right to sue on its own behalf.[52]

Similarly, Landover's reliance on the legal principle of looking beyond the pleadings of the case—as espoused when realigning parties—is unpersuasive.[53] Specifically, Landover argues that, looking beyond the pleadings of the case, "the presence of the same person, in two different capacities, on both sides of the caption, does not defeat diversity."[54] Although Landover and Rainbow are members of LEK, Landover, Rainbow, and LEK are all separate legal entities—none of which appear on both sides of the caption.[55] Accordingly, the Court declines to extend the principle behind party realignment to find that LEK is a nominal party.

### 3. Fraudulently Joined Party

Landover alternatively argues that LEK is a fraudulently joined party, thus precluding LEK's shared citizenship with Landover from defeating diversity jurisdiction. Fraudulent joinder is a difficult-to-establish exception to complete diversity that prevents remand.[56] The presence of a fraudulently joined defendant does not defeat complete diversity as courts do not

---

[50] 858 F.3d 719, 721 (2d Cir. 2017).

[51] *Id.* at 731.

[52] *See* K.S.A. § 17-7673(b).

[53] *See City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) ("It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'") (quoting *Dawson v. Columbia Trust Co.*, 197 U.S. 178, 180 (1905))).

[54] Doc. 17 at 11–12.

[55] *See* K.S.A. § 17-7673(b).

[56] *See Long v. Halliday*, No. 18-4068, 2019 WL 1550379, at *2 (10th Cir. April 10, 2019).

consider the citizenship of fraudulently joined parties when evaluating diversity.[57] Instead, under the fraudulent joinder doctrine, federal district courts disregard "for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."[58] As the party seeking federal jurisdiction, the removing party bears the heavy burden of proving a party was fraudulently joined to defeat jurisdiction by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or, (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[59] The standard for fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)."[60] All factual and legal issues must be resolved in favor of the plaintiff.[61] The removing party must establish fraudulent joinder by clear and convincing evidence.[62] "[T]he factual issues 'must be capable of summary determination and be proven with complete certainty.'"[63] Further, when *any one claim* against the non-diverse defendant is possibly viable, remand is required.[64]

---

[57] *Id.*

[58] *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir. 1999)).

[59] *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)).

[60] *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. April 14, 2000) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d. 848, 851–53 (3d Cir. 1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.").

[61] *Dutcher*, 733 F.3d at 987–88.

[62] *Smith v. Blockbuster Entm't Corp.*, 100 F.3d 878, 880 (10th Cir. 1996).

[63] *Muller v. TSC Indus., Inc.*, No. 92-4171-C, 1992 WL 331286, at *3 (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

[64] *Montano v. Allstate Indem.*, 2000 WL 525592, at *2 (10th Cir. April 14, 2000) (citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983)) (emphasis added).

The parties initially dispute whether fraudulent joinder should extend to plaintiffs[65] as the Tenth Circuit has not decided this issue. For purposes of deciding this motion, the court will assume, without deciding, that this circuit would extend the fraudulent joinder doctrine to plaintiffs. The Court finds, however, that Landover fails to demonstrate that LEK has no possibility of establishing a cause of action against it.

Landover argues that LEK is a fraudulently joined party because the statute of limitations bars LEK from any possibility of recovery on the claims asserted. Conversely, Plaintiffs assert a statute of limitations argument is not an appropriate basis for finding fraudulent joinder. While the removing party may use the statute of limitations argument to establish fraudulent joinder when the statute of limitations is easily determined, courts reject the argument when the issue is factually ambiguous.[66] Here, the Court cannot determine with complete certainty whether the statute of limitations bars Landover's liability to LEK.[67]

Plaintiffs allege that Landover breached at least four duties under the operating agreement: (1) failure to hold funds in trust for LEK and not comingle funds; (2) failure to

---

[65] *Compare Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) ("This court believes that in an appropriate case, such as this one, the Tenth Circuit would apply the fraudulent joinder doctrine to a non-diverse plaintiff, as there is 'no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiff.'" (citation omitted)) *with Breland Homes, LLC v. Wrigley*, No. 5:18-CV-1350-CLS, 2019 WL 1466239, at *8–11 (N.D. Ala. April 3, 2019) ("[T]his court finds that the doctrine of fraudulent joinder does not apply to a fraudulently joined plaintiff.") *and Reeves v. Pfizer, Inc.*, 880 F.Supp.2d 926, 928–28 (S.D. Ill. 2012) (noting a split of authority and declining to extend fraudulent joinder to plaintiffs).

[66] *Riverdale Baptist Church v. CertainTeed Corp.*, 349 F. Supp. 2d 943, 949–50 (D. Md. 2004) ("Allowing a factually complicated statute of limitations issue that has taken months to develop in state court to support a fraudulent joinder claim runs afoul of both the fraudulent joinder doctrine . . . and the principles underlying the removal provisions generally." (internal citation omitted)); *Hames v. Bayer AG*, No. CIV-04-183-M, 2004 WL 5363840, at *2–3 (W.D. Okla. 2004) (explaining that the dispute as to the statute of limitations was factual in nature and finding that the defendants were unable to prove without complete certainty whether the plaintiff's claims were time-barred, which precluded a finding of fraudulent joinder).

[67] *Riverdale Baptist Church*, 349 F. Supp. 2d at 949–50; *Hames*, 2004 WL 5363840, at *2; *see also Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) ("[Factual] issue[s] must be capable of summary determination and be proven with complete certainty.").

deposit funds in a separate account for LEK; (3) failure to obtain permits and licenses; and (4) failure to prosecute permit and license applications with the FCC. Under Kansas law, the five-year statute of limitations on a breach of contract claim accrues when breach occurs, and a plaintiff's knowledge of the breach is irrelevant.[68] The Court finds it is unclear when the breach of contract occurred. With respect to the breach of contract for not obtaining permits or licenses for LPTV channel's in LEK's name and not preparing, filing, or using its its best efforts to prosecute applications for LPTV permits and licenses on behalf of LEK, Landover contends that the contract would have been breached upon the FCC's notice providing for a freeze on LPTV applications on October 28, 2010. Plaintiffs allege in their Complaint, however, that Landover assured Plaintiffs it had a plan to obtain the LPTV licenses in accordance with the Operating Agreement and continued to assure them that it was making progress on its contracted services until at least March 29, 2016.[69] Plaintiffs further allege it was not until April 19, 2018 that "it became clear that Landover would not be able to meet its contractual obligation to seek LPTV licenses."[70] Accordingly, the Court cannot decide with complete certainty when the breach of contract occurred, and thus whether LEK's breach of contract claims are precluded by the statute of limitations.

As to the breach of fiduciary duty claims, the statute of limitations under Kansas law is two years, beginning to accrue when the injury became reasonably ascertainable.[71] With respect to the breach of fiduciary duty claims arising out of Landover not obtaining the licenses or permits, as discussed above, the Court again cannot decide with complete certainty when the

---

[68] *Law v. Law Co. Bldg. Ass.*, 295 Kan. 551, 574 (2012) ("A cause of action for breach of contract accrues on the date of breach, not the date of discovery").

[69] Doc. 1-1, Complaint ¶¶30–40.

[70] *Id.* ¶41.

[71] *Mynatt v. Collis*, 57 P.3d 513, 526 (Kan. 2002) (quoting K.S.A. 60-513(a), (b)).

alleged breach occurred. Moreover, resolving any issue in favor of Plaintiffs, Plaintiffs assert it did not become clear until April 19, 2018 that Landover could not meet its obligations related to obtaining licenses or permits. Therefore, as the Court finds there is at least uncertainty as to whether the statute of limitations precludes both LEK's breach of fiduciary duty and breach of contract claims, Landover fails to meet its heavy burden of establishing that LEK has no possibly viable cause of action against Landover in Kansas state court.

For the above reasons, Landover does not establish by a preponderance of the evidence that the Court has federal jurisdiction over the case. In consideration of the guiding principle that any doubtful case must be resolved in favor of remand, the Court finds that the case should be remanded to the District Court of Brown County, Kansas.

**B.     Request for Attorneys' Fees and Costs**

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." As the Supreme Court has explained,

> [a]bsent unusual circumstances, courts may award attorney's fees under 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.[72]

The Court is unable to conclude that Landover did not have an objectively reasonable basis for seeking removal. Plaintiffs argue that Landover knew its assertion of federal jurisdiction was legally unsound and refused to withdraw its Notice of Removal at Plaintiffs' request, and further assert that this has created significant delay and unnecessary expenses. Plaintiffs rely on their

---

[72] *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1089 (D. Kan. 2006) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

email exchange with Landover's counsel requesting that Landover voluntarily agree to remand the case to the District Court of Brown County, Kansas to demonstrate that Landover knew its arguments would not succeed.

Although the Court finds that it lacks subject matter jurisdiction over the case, Landover thoughtfully argued the existence of diversity jurisdiction based on its theory that LEK was either a nominal party or fraudulently joined. Through its briefing, Landover demonstrates it had a reasonable basis to believe its nominal party and fraudulent joinder arguments were appropriate and would succeed at this stage of litigation. Moreover, the Court does not find any unusual circumstances that would warrant a departure from the general rule. Therefore, the Court declines Plaintiffs' request to impose fees and costs associated with this motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Remand (Doc. 5) is **granted in part and denied in part.** Plaintiffs' motion for remand is granted and Plaintiffs' request for attorneys' fees is denied.

**IT IS FURTHER ORDERED** that this case be remanded to the District Court of Brown County, Kansas.

**IT IS SO ORDERED.**

Dated: July 18, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
